UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA CHESTER,

      Plaintiff,

                                     Case No. 16-11647

v.

                                     HON. DENISE PAGE HOOD

MUTUAL OF OMAHA
INSURANCE CO.,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [Dkt. No. 9] and DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 10]**

**I.    INTRODUCTION**

Plaintiff brought this action seeking continued long-term disability ("LTD")

benefits under a policy issued by Defendant to Plaintiff's employer, Great Lakes

Transportation Ventures ("Policyholder"). Plaintiff's claim, brought pursuant to 29

U.S.C. § 1132(a)(1)(B) (§502(a)(1)(B) of the Employee Retirement Income Security

Act of 1974 ("ERISA"), stems from Defendant's decision to terminate payment of

LTD benefits to Plaintiff in November 2014 because she "was able to return to work

at any Gainful Occupation [defined below] from November 16, 2014 and ongoing."

On October 24, 2016, the parties filed cross-motions for summary judgment. Dkt. Nos. 9 and 10. Both motions have been briefed. A hearing on the motions is scheduled for January 18, 2017. For the reasons that follow, the Court grants Defendant's Motion for Judgment, denies Plaintiff's Motion for Summary Judgment, and dismisses Plaintiff's cause of action.

## II. BACKGROUND

In her Complaint, Plaintiff alleged that she has a "rotator cuff tear, adhesive capsulitis [that] made it impossible for her to work." Dkt. No. 1, Paragraph 6. On August 16, 2012, Plaintiff presented to Matthew P. Steffes, MD ("Dr. Steffes") with a chief complaint of right shoulder pain. The MRI of the right shoulder revealed significant partial-thickness tearing of the supraspinatus, questionable full-thickness tear. Plaintiff was not interested in an injection and was given a prescription for Mobic. On September 13, 2012, Plaintiff saw Dr. Steffes with a chief complaint of a partial right supraspinatus tear. On September 26, 2012, Plaintiff underwent an MRI of her right shoulder, which showed: (1) minimally retracted full-thickness rotator cuff tear, (2) mild AC joint osteoarthritis. On October 1, 2012, Plaintiff presented to Dr. Steffes with an MRI of her right shoulder that showed a full-thickness tear of her right supraspinatus, and she was given injections of 1 cc 40 mg Depo-Medrol and 2 cc of 1% lidocaine. On October 30, 2012, Plaintiff saw Dr. Steffes for follow-up, with the

same complaints. Dr. Steffes discussed rotator cuff repair with acromioplasty and placed Plaintiff off work for the next month.

The Physician's Statement ("Statement") portion of Plaintiff's claim for LTD benefits was prepared and submitted by Dr. Steffes on November 20, 2012. The Statement noted a diagnosis of rotator cuff tear, with shoulder pain and limited range of motion. That Physician Statement further noted that Plaintiff's condition was not work-related. That Physician Statement went on to indicate a restriction on use of the right shoulder/upper extremity, a limitation on commercial vehicle driving, a prognosis for recovery saying "improved with surgery," and the observation that plaintiff had not achieved maximum medical improvement."

Regarding an eight-hour workday, Dr. Steffes indicated that plaintiff could sit for eight hours, stand for eight hours, and walk for eight hours. He also indicated restrictions regarding driving/operating a motor vehicle, right-arm lifting/carrying, use of right hand in repetitive actions, and reaching above right shoulder level.  Plaintiff had no restrictions on the use of her feet in repetitive movements, or on bending, squatting, crawling, or climbing. Regarding his expectation as to plaintiff's return to prior level of functioning, Dr. Steffes wrote "pending surgery."

On November 27, 2012, Defendant informed Plaintiff that it had received her

LTD claim application, and on December 4, 2012, Defendant approved Plaintiff's claim for LTD benefits. Defendant indicated that Plaintiff became disabled on August 18, 2012 and that her elimination period extended from August 18, 2012 to November 16, 2012. On December 4, 2012, Defendant informed the Policyholder that Defendant was approving Plaintiff's claim for LTD benefits based on the medical information Defendant received.

On February 4, 2013, Plaintiff presented to The Guidance Center for a Comprehensive Biopsychosocial Assessment. Plaintiff reported episodes of nervous shaking and fluttering in the previous 14 years since her father passed away, and that since the summer of 2012, the shaking had been more consistent and severe. On February 26, 2013, Plaintiff presented to The Guidance Center for a Psychiatric Evaluation. Plaintiff's main concern was that she had a nervous feeling that ran through her chest and arms and "cannot shake it awake" and gets these feelings every day and lasts on and off all day. Plaintiff was diagnosed with: (1) MDD recurrent moderate panic disorder with agoraphobia, (2) NIDDM, (3) hypercholesterol, (4) rotator cuff injury, and (5) poor relationship with peers. She was instructed to continue Prozac, Trazodone and Xanax.

On March 31, 2013 and November 18, 2013, Plaintiff saw Dr. Steffes with the continued complaint of right full thickness supraspinatus tear. She was given another

injection at the first appointment and prescribed Norco and instructed to do exercises on her own at the second appointment. On March 21, 2014, Plaintiff returned to The Guidance Center with major depressive disorder, panic disorder without agoraphobia, and generalized anxiety disorder.

On June 4, 2014, Defendant informed Plaintiff that Defendant was reviewing Plaintiff's claim to determine if she met the policy definition of Disability based on her inability to perform all of the Material Duties of any Gainful Occupation beyond November 16, 2014. "Gainful Occupation means an occupation, for which [Plaintiff is] reasonably fitted by training, education or experience, is or can be expected to provide [Plaintiff] with Current Earnings at least equal to 60% of Basic Monthly Earnings within 12 months of [Plaintiff's] return to work." "Material Duties means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will [Defendant] consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of [Plaintiff's] Regular Occupation is the ability to work for an employer on a full-time basis."

On July 9, 2014, Plaintiff consulted with orthopedic surgeon Lawrence G. Morawa, M.D. ("Dr. Morawa"), seeking an evaluation of her right shoulder. Dr. Morawa's physical examination of Plaintiff indicated limited range of motion because

of pain, but no signs of impingement, with neurovascular being intact, and with no issues other than range of motion. Dr. Morawa's assessment was tendonitis of the right shoulder. In connection with his July 9, 2014 evaluation, Dr. Morawa filled out a general information form. The first page of the form repeated his diagnosis of right shoulder tendonitis, his finding of limited range of motion, and stated his conclusion that there were no secondary conditions contributing to the disability. On the first page, Dr. Morawa also noted: (1) his opinion that Plaintiff has not achieved maximum medical improvement; (2) his expectation of fundamental changes in Plaintiff's medical condition within 1-2 months; (3) his opinion that Plaintiff should be restricted from lifting anything over 10 lbs, restricted to limited use of right arm, and restricted from overhead reaching; and (4) his willingness to release Plaintiff to pursue vocational rehabilitation. On page two of the form, Dr. Morawa recommended: (a) a return-to-work date of July 28, 2014; (b) modified job responsibilities of no heavy lifting; (c) no overhead work for one-month period; and (d) rehabilitation services consisting of physical therapy.

On August 18, 2014, Plaintiff presented to The Guidance Center for a Comprehensive Biopsychosocial Assessment. Plaintiff complained of increased anxiety, depression, panic attacks, racing thoughts and insomnia and reported experiencing episodes of nervous shaking and fluttering in the previous few years

since the death of her father. On September 9, 2014, Plaintiff underwent an MRI of her brain at Oakwood Imaging Center, which showed: (1) no acute or new intracranial process; and (2) previously described microadenoma not well appreciated, no definite pituitary nodule seen. On September 22, 2014, Douglas Palmer, MS, performed a transferable skills assessment of the Plaintiff at the Defendant's request.

On October 20, 2014, an MRI of Plaintiff's shoulder performed by Dr. Rob A. Reed, MD showed: (1) redemonstration of a full-thickness tear of the supraspinatus tendon with retraction, (2) full-thickness tear involving the long head of the biceps tendon with associated retraction, findings unchanged from prior examination, (3) trace glenohumeral effusion, and (4) mild acromioclavicular osteoarthrosis. On November 20, 2014, Defendant wrote to Plaintiff's doctor, Dr. Morawa, requesting that he agree with the Defendant's determination that Plaintiff was capable of performing light to medium work that did not require her to perform right arm heavy lifting or overhead work.

On November 25, 2014, Plaintiff presented to Carlos Shelton, NP, with a sudden onset of back pain which had been occurring in a consistent pattern for 10 days, described as a dull ache and was located in the lower to mid back. On November 29, 2014, Plaintiff presented to Dr. John T. McCracken, MD ("Dr.

McCracken") with a complaint of back pain which had been occurring in a persistent pattern for months and was increasing.

On December 2, 2014, Plaintiff presented to Vani Sebesan, MD, with right shoulder pain; as noted above, Plaintiff previously had an MRI conducted which showed a rotator cuff tear. On December 3, 2014, a progress note was entered by The Guidance Center in which Plaintiff presented for treatment regarding her depression, anxiety and panic attacks. Plaintiff reported experiencing agitation with other people, feeling fatigued all the time, having no pleasure in life, getting poor sleep, feeling isolated, withdrawn, tired, sad, depressed and cries all the time. Plaintiff had a loss of appetite which lead to her losing 80 pounds.

On December 3, 2014, Defendant wrote to Plaintiff that Defendant had completed its review of the change in definition of Plaintiff's LTD eligibility. Defendant determined that Plaintiff did not meet the policy definition of Disability and Disabled from any Gainful Occupation and were unable to approve benefits beyond November 15, 2014. Plaintiff appealed that denial of benefits.

On December 8, 2014, Plaintiff presented to The Guidance Center for a Psychiatric Evaluation with Charlotte Baker, MD. Plaintiff complained of nervous feeling that runs through her chest and arms and felt like she could not shake it and that it kept her up at night with anxiety and racing thoughts. Plaintiff also complained

that the sad feelings would not go away and she felt low, unmotivated and like crying. Id. Plaintiff had been taking medication from The Guidance Center since 2013 with little relief.

On January 8, 2015, Plaintiff saw Dr. McCracken for right shoulder pain. Plaintiff had an MRI that showed a full thickness tear in the right shoulder. On March 2, 2015, Plaintiff presented to Dr. McCracken with a complaint of hypertension and complained of right shoulder pain and back pain that had begun on November 15, 2014. On March 30, 2015, Plaintiff presented to Dr. McCracken with a complaint of back pain that was increasing and precipitated by heavy lifting and aggravated by prolonged sitting. On April 16, 2015, Plaintiff had an x-ray of the lumbar spine performed, and it showed mild degenerative marginal spur formation, minimal anterolisthesis at L4-L5 related to degenerative changes at facet joints.

An April 20, 2015 letter from Dr. McCracken indicated that Plaintiff continued to have chronic right shoulder pain with restricted range of motion. As she had previously, Plaintiff declined shoulder surgery at that time. She again complained of persistent back pain that was aggravated by prolonged sitting, standing, and constant laying down. Plaintiff reported being treated for anxiety and depression by a therapist.

On June 18, 2015, in conjunction with Plaintiff's appeal of the denial of benefits, Lyle Forehand, Jr., MD ("Dr. Forehand"), performed a medical file review at the request of Defendant. Dr. Forehand opined that, within a reasonable degree of certainty, Plaintiff did not have any psychiatric impairment from November 16, 2014 through June 3, 2015. Dr. Forehand admitted that the record supported a diagnosis of unspecified depressive disorder based on Plaintiff's consistently depressed mood, reports of hopelessness and intermittent morbid thoughts. Dr. Forehand also noted that two psychiatrists had diagnosed her with major depressive disorder but concluded that Plaintiff's most likely diagnosis was persistent depressive disorder.

On June 19, 2015, William M. Strassberg, MD ("Dr. Strassberg"), performed a medical record review at the request of the Defendant. Dr. Strassberg opined that the information he reviewed supported a diagnosis which included: (1) chronic low back complaints, (2) right shoulder rotator cuff tear, (3) right should adhesive capsulitis, and (4) sleep apnea, prolactinoma, morbid obesity, diabetes mellitus, hypertension, depression, and panic attacks. Dr. Strassberg agreed with the restrictions set forth in the records, examinations and diagnostic tests he reviewed. On July 9, 2014 Plaintiff was seen by Kelli Crawford, MD ("Dr. Crawford"), for evaluation of her right shoulder. Dr. Crawford's impression was tendonitis of the right shoulder and injected Plaintiff's right shoulder with 2 cc of 1%Xylocaine and

40 mg of Kenalog.  On September 9, 2015, Defendant informed Plaintiff that it: (1) agreed Plaintiff was impaired and unable to perform the material duties of her regular occupation as a Bus Driver beginning August 18, 2012; but (2) the medical evidence did not support restrictions preventing Plaintiff from returning to work at any Gainful Occupation beginning on November 16, 2014.  Defendant upheld its prior decision to deny benefits.  On May 6, 2016, Plaintiff filed the instant cause of action.

## III.    APPLICABLE LAW & ANALYSIS

### A.    Standard of Review

A court reviews *de novo* the denial of benefits sought under §502(a)(1)(B) of ERISA "unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the plan affords the administrator or fiduciary the discretion to make those decisions, the denial of benefits is reviewed only to determine if such decisions were "arbitrary and capricious." *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 983 (6th Cir. 1991).  The administrator's or fiduciary's decision "is not arbitrary and capricious if it is based on a reasonable interpretation of the plan," *Shelby Co. Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Fund*, 203 F.3d 926, 933 (6th Cir. 200), and will be upheld if it is supported by "substantial evidence," which is evidence that

is "rational in light of the plan's provisions." *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation omitted); *Smith v. Ameritech*, 129 F.ed 857, 863 (6th Cir. 1997); *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). An interpretation is unreasonable if it imposes a requirement that cannot be found in the plan's language. *Shelby*, 203 F.3d at 935.

The Sixth Circuit summed up the arbitrary and capricious standard in the ERISA context this way:

> . . . Where the benefit plan at issue gives the plan administrator the discretionary authority to construe and interpret the plan, as in the instant case, the plan administrator's decision is reviewed under the arbitrary and capricious standard. *Id*.; *Hunter v Caliber Sys., Inc.*, 220 F.3d 701, 710 (6th Cir. 2002). In the instant case, the parties do not dispute the applicability of the arbitrary and capricious standard of review.

> "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Hunter*, 220 F.3d at 710 (citations and quotation marks omitted). Under this deferential standard of review, an appellate court will uphold the plan administrator's decision if it is "rational in light of the plan's provisions." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)). Stated differently, if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," the decision will be upheld. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (quoting *Glenn v. Metro. Life. Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)).

*Rose v. Hartford Financial Servs. Group*, 268 F. App'x 444, 449 (6th Cir. 2008).

## B.    Analysis

A party claiming LTD benefits under § 502(a)(1)(B) of ERISA must prove entitlement to the claimed benefits by a preponderance of the evidence. *Javery v. Lucent Techs.,Inc., Long Term Disability Plan for Mgmt. or LBA Emples.*, 741 F.3d 686, 701 (6th Cir. 2014). Plaintiff's Complaint alleges that she was wrongfully denied LTD benefits after November 15, 2014, for the injury to her right shoulder. In her briefs, she also asserts that she is entitled to LTD benefits based on an injury to her back and psychiatric issues.

It is undisputed that, because Plaintiff could not perform her job duties as a bus driver for the Policyholder, Defendant paid Plaintiff a monthly benefit from November 16, 2012 to November 15, 2014 pursuant to the Policy. The Policy provides that "[a]fter a Monthly Benefit has been paid for 2 years, Disability and Disabled mean [Plaintiff is] unable to perform all of the Material Duties of any Gainful Occupation." Defendant contends that, despite Plaintiff's assertion that "there is sufficient evidence [Plaintiff] has been unable to return to work at any gainful occupation since November 16, 2014," there is no evidence that Plaintiff was unable to perform all of the Material Duties of any Gainful Occupation.

Defendant argues that none of the health professionals who saw Plaintiff concluded that she could not work. Defendant notes that, between August 2012 and July 2014, Plaintiff's orthopedic surgeons, Dr. Steffes and Dr. Morawa, stated that Plaintiff could return to work with certain specific restrictions pertaining to her right shoulder. In the November 20, 2012 Statement, Dr. Steffes stated that Plaintiff could sit for eight hours, stand for eight hours, and walk for eight hours. He further represented that Plaintiff was not restricted, except that she could not drive a commercial vehicle, should restrict her right-arm lifting and carrying, should restrict use of her right hand for repetitive tasks, and should restrict reaching her right arm about shoulder level. Dr. Steffes also opined that Plaintiff had not reached maximum improvement and that surgery would improve her prognosis for recovery. Dr. Steffes reached the same conclusions in March 2013 and November 2013.

In July 2014, Dr. Morawa diagnosed Plaintiff with tendonitis of her right shoulder with a limited range of motion. Dr. Morawa indicated that Plaintiff had not achieved maximum medical improvement and that he expected Plaintiff's medical condition to fundamentally change within 1-2 months. Dr. Morawa restricted Plaintiff from lifting more than 10 pounds, directed limited use of the right arm, barred any overhead reaching, and was willing to release Plaintiff to pursue vocational

rehabilitation. Dr. Morawa recommended a return-to-work date of July 28, 2014, with modified job responsibilities, no heavy lifting or overhead work, and physical therapy.

Dr. McCracken saw Plaintiff from May 2013 to March 2014. There is no evidence in the record that Dr. McCracken opined that Plaintiff could not perform work that would fall within "Material Duties" of any "Gainful Occupation." Contrary to Plaintiff's implication, Dr. McCracken's letter dated April 20, 2015 does not suggest that Plaintiff was unable to perform any such work. In June 2015, Dr. Mukhi conducted an MRI examination of Plaintiff's right shoulder and found the same results as the previous MRI examination(w). Dr. Strassberg agreed with the stated restrictions and limitations prescribed by Dr. Morawa and did not dispute the findings and opinions of Dr. Steffes, Dr. Morawa, and Dr. Mukhi.[1]

With respect to psychiatric issues, Defendant first asserts that the absence of any reference to them in Plaintiff's complaint demonstrate that Plaintiff does (or did) not believe that psychiatric issues constituted a basis for proving that Plaintiff could not perform any Gainful Occupation. Defendant next asserts that Plaintiff has not shown, and cannot show, that her psychiatric issues justify the award of LTD benefits. Defendant notes that there is no medical opinion or assessment in the record that

---

[1]The Social Security Administration also denied Plaintiff's claim for disability benefits after concluding that there were many thousands of positions in the region (and more than a million nationally) that Plaintiff could perform, including small parts assembler, inspector and hand packager, and assembly machine tender.

suggests Plaintiff was unable to work in any position, and Defendant contends the evidence shows that she could work. Defendant cites the April 10, 2015 treatment notes from The Guidance Center that state that: (a) Plaintiff was in compliance with her medication, (b) her mental health status was stable; (c) her presentation was alert, cooperative and verbal; (d) her response was active assertive, attentive, engaged, receptive; and (e) she had gained insight. Defendant also relies on Dr. Forehand's concurrence in the finding that Plaintiff did not have any psychiatric illness that limited her functioning.

Defendant concludes by arguing that Plaintiff's claim for LTD benefits must fail, even if she had an otherwise viable claim. Defendant relies on a Policy provision that bars recovery of LTD benefits for more than 24 months for Mental Disorders. The "Mental Disorder Limitation" provides:

> If you are disabled because of a Mental Disorder, Your benefits will be limited to a total of 24 months while insured under the Policy, unless you are confined as a resident inpatient in a Hospital at the end of that 24-month period. The Monthly Benefit will continue to be paid during such confinement.

It is undisputed that Plaintiff was not confined in a hospital at any relevant time. Defendant contends that Plaintiff is barred from recovering for a Mental Disorder under the Policy after November 16, 2014 because she had received LTD benefits for the two years (24 months) preceding that date.

Plaintiff does not address this issue. If there was evidence to support a psychiatric condition that disabled her from her position (which there is not), an argument <u>could be made</u> on Plaintiff's behalf that she would be entitled to recover for a Mental Disorder beyond November 16, 2014. The Policy states that Monthly Benefits are limited to a total of 24 months "[i]f you are Disabled because of a Mental Disorder[.]" In this case, the Disabled condition for which Plaintiff was paid Monthly Benefits from November 16, 2012 to November 16, 2014 was the injury to her right shoulder, not a Mental Disorder. Arguably, if Plaintiff had a Mental Disorder as of November 16, 2014, she would be entitled to another 24 months of LTD benefits under the original definition of Disabled or Disability.

Plaintiff asserts that Defendant has tried to minimize her injuries and exaggerate her work capacity, despite the opinions of her physicians and psychologists. Plaintiff argues that Dr. Forehand, who conducted only a medical file review, admitted that Plaintiff was correctly diagnosed with major depressive disorder but contradicted that finding by concluding Plaintiff did not have any psychiatric impairment from November 16, 2014 (the day the definition of Disabled changed to "any Gainful Occupation") to June 3, 2015. Plaintiff suggests that this case is like a Sixth Circuit case involving Defendant, *Koning v. United of Omaha Life Ins. Co.*, 627 F. App'x 425 (6th Cir. 2015), and should be remanded for purposes of a consideration of the treating

physician opinions of Dr. Steffes, Dr. Morawa, and Dr. McCracken. In *Koning*, the court found that the plan failed to adequately evaluate and consider evidence favorable to plaintiff, a selective review that courts have held to be "arbitrary and capricious," *id.* at 434-36, and remanded the matter to the district court for a consideration of all of the evidence in the record.

Plaintiff asserts that she underwent several psychiatric evaluations at The Guidance Center that confirmed she suffered from anxiety, depression, panic attacks, racing thoughts, insomnia, and episodes of nervous shaking and fluttering. Plaintiff contends Defendant disregarded those evaluations and relied upon only Dr. Forehand's conclusions. Plaintiff's arguments fail to identify any professional who indicated that she was disabled from a position that would fall under the definition of any Gainful Occupation.

The Court finds that Plaintiff's assertions that Defendant (or Dr. Forehand) failed to give credible reasons to support the conclusion that Plaintiff did not have any psychiatric impairment from November 16, 2014 to June 3, 2015 are irrelevant. In the absence of anyone indicating that Plaintiff was Disabled because she could not perform any Gainful Occupation, Defendant (or Dr. Forehand) had no reason to discuss why it was rejecting and rebutting a finding or conditions that supported a finding that was disabled from any Gainful Occupation after November 16, 2014. The

Court finds that Defendant cannot be said to have made an arbitrary and capricious decision to deny Plaintiff LTD benefits under the Policy.

For the reasons discussed above, *Koning* and the other cases cited by Plaintiff do not support a finding that Plaintiff was unable to perform any Gainful Occupation. The record is devoid of objective evidence of disability by Plaintiff's treating physicians or any other health professionals. *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015) (citation and internal quotations omitted) (a plan acted arbitrarily and capriciously when it "completely ignored evidence from [claimant's] treating physicians" and "engage[d] in a selective review of the administrative record to justify a decision to terminate coverage); *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) (a plan cannot ignore favorable evidence from a treating physician, but must "give reasons for adopting an alternative opinion"); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003) ("plan administrators are not obliged to accord special deference to the opinions of treating physicians" but they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."); *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 721 F.Supp.2d 584, 603-06 (E.D. Mich. 2010) (plan acted arbitrarily and capriciously when it denied benefits based on conclusory reports from independent medical consultants stating that claimant was able to work, when

independent medical consultant did not adequately address objective evidence of problems identified by treating physicians).

The Court concludes that Plaintiff cannot establish that Defendant acted arbitrarily or capriciously in denying LTD benefits for her after November 16, 2014, or that she is entitled to the LTD benefits she seeks in this case. The Court grants Defendant's Motion for Judgment, denies Plaintiff's Motion for Summary Judgment, and dismisses Plaintiff's cause of action, with prejudice.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment **[Dkt. No. 9]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **[Dkt. No. 10]** is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's cause of action is **DISMISSED WITH PREJUDICE**.

IT IS ORDERED.

S/Denise Page Hood

Denise Page Hood

Chief Judge, United States District Court

Dated:  August 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 31, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry

Case Manager